[Civ. No. 548.   First Appellate District.—May 16, 1910.]

# EVELINE A. GRIGGS, Appellant, v. JOHN HARTZOKE, Respondent.

TAXATION — CITY TAXES — CITY ORDINANCE AUTHORIZED BY GENERAL
LAW—ASSESSMENT AND COLLECTION—SALES TO STATE.—Where by
the general law of 1895 (Stats. 1895, p. 213), any city or munici-
pal corporation, not of the first class, was authorized, by ordinance,
to provide for the assessment and collection of its city taxes by
the same methods employed by county officers, and by ordinance of
the city of San Jose, it was so provided, all of its city taxes must
thereafter be assessed and collected by the ordinary machinery em-
ployed for the assessment and collection of state and county taxes,
including sales to the state, in case of delinquency for the city
tax, as well as for the state and county taxes, and the passage of
title to the state, in case of nonredemption thereof.

ID.—DEED TO STATE — QUIETING TITLE — CROSS-COMPLAINT TO ENFORCE
TAX TITLE — NONANSWER — ADMISSION OF LEVY OF CITY TAX.—
Where a deed had passed to the state for city, county, and state
taxes, and the complaint was so framed as to cover the elements of
an action of ejectment and to quiet title, and the defendant set
up a tax title acquired from the state by way of cross-com-
plaint under a deed for city, county and state taxes, to which no
answer was filed, it cannot be objected by plaintiff that no city
tax was levied for the year for which the sale was made, that fact
alleged in the cross-complaint being admitted by failure to deny
the same.

ID.—EFFECT OF RECITAL IN DEED TO STATE—PRIMA FACIE EVIDENCE.—
Where the deed to the state recited that a levy had been made for
the city taxes, such recital, under the provisions of section 3186 of
the Political Code, is *prima facie* evidence of its truth.

ID.—DEED FROM TAX COLLECTOR TO STATE'S GRANTEE.—*Held,* that the
deed of the state's title to the defendant by the tax collector was
executed in the usual form, and that it was sufficient in form to
divest the state's title and pass it to the grantee.

ID.—RECITALS REQUIRED—IMMATERIAL DISCREPANCY.—Neither the total
tax nor the amounts which go to make it up were required to be re-
cited in the tax deed. It is the amount of the assessment which
must be recited, both in the certificate of sale and tax deed, and it
is sufficient that this is the same in both documents. A variance
of a few cents in the recital of the tax levied for county purposes,
between the certificate and the deed, is immaterial.

ID.—NOTICE OF SALE BY STATE—INCORRECT COMPUTATION OF INTEREST—
FAILURE OF REDEMPTION—SALE NOT VOID.—The mere fact that

there was a mistaken computation of interest in the notice of sale by the state would not render the sale by the state void under the present law, under which the property belonged to the state, and it might sell it for a sum in excess of the amount of the tax, where the plaintiff failed to redeem and tender the amount due before the sale.

APPEAL from a judgment of the Superior Court of Santa Clara County, and from an order denying a new trial. J. R. Welch, Judge.

The facts are stated in the opinion of the court.

Will M. Beggs, and A. H. Jarman, for Appellant.

Nicholas Bowden, for Respondent.

KERRIGAN, J.—This is an appeal by plaintiff from the judgment in favor of defendant, also from an order denying her motion for a new trial and from an order denying her motion to vacate the judgment, amend the conclusions of law, and enter a different judgment, the last-mentioned motion being made under sections 663 and 663A of the Code of Civil Procedure.

The complaint in this action is so framed as to cover both the elements of an action in ejectment and an action to quiet title to the land described in the complaint, which is situated within the city of San Jose. Defendant answered, and also filed a cross-complaint, setting up title in himself by virtue of a tax deed.

The facts presented by the record are briefly as follows: On July 26, 1897, plaintiff purchased the property, and on March 1, 1898, it was assessed to her at $4,260. According to the assessment the amount of taxes on said property for the year 1898 was, for county purposes $26.07, for city purposes $54.74, and for state purposes $20.79. Said taxes were not paid, but became delinquent, and costs, penalties and charges accrued thereon in the further sum of $13.17. Nearly five months after plaintiff purchased the property, to wit: December 21, 1897, she delivered to Eveline Dubois a mortgage thereon as security for the payment of $8,000, which was not recorded until March 12, 1898. The mortgage being for more than the assessed value of the property, it may be supposed that

plaintiff assumed that the mortgagee would have the mortgage assessed and pay taxes thereon, and that there would be no assessment against the land as distinct from the mortgage. However that may be, taxes on the property for the year 1898 were not paid, nor were they paid for any year thereafter up to and including the year 1904. The taxes for the year 1898, as mentioned above, having become delinquent, the county tax collector on June 27, 1899, duly executed a certificate of sale of said property for nonpayment of city, county and state taxes for that year to the state of California. Subsequently on July 25, 1904, he made and executed a deed to the state for the nonpayment of such taxes. Thereafter the tax collector, pursuant to an authorization from the controller, advertised the property for sale and sold the same to the defendant.

The first question raised by the appellant is, Has the state, through the county tax collector, authority to sell property for delinquent municipal taxes due the city of San Jose?

The city of San Jose is governed by charter (Stats. 1897, p. 592). Article IV thereof deals with the subject of revenue and taxation, and in substance provides that the mayor and common council shall have full power and authority to assess, levy and collect taxes, and that the city may by ordinance avail itself of the privilege of having its taxes assessed and collected by the county officers. It is also the duty of the mayor and common council, under section 4 of said article, in providing for levying and collecting city taxes, to be governed by state laws relating to the levying and collecting of state and county taxes as far as applicable. This section further provides that "all sales and conveyances of property made and executed for the nonpayment of delinquent taxes shall have the same force and effect as when made and executed for the nonpayment of taxes levied for state and county purposes." By general law (Stats. 1895, p. 219) the legislature provided that the governing body of any municipal corporation, such as the city, by ordinance might avail itself of the privilege of having its taxes assessed and collected by county officers. The common council of San Jose, pursuant to section 3 of article IV of said charter, did pass such an ordinance, and thereby brought itself within the provisions of the said general law. Section 1 of the act of 1895 among

other things provides that after a city, by ordinance, has availed itself of this act, ''all assessments shall be made and taxes collected by the assessor and tax collector of such county.'' Section 5 provides for the adding of a separate column for the city tax to the general county assessment-book. It provides further that ''such taxes so levied shall be collected at the same time and in the same manner as state and county taxes; and when collected the net amount ascertained by sections six and seven of this act shall be paid to the . . . municipal corporation or city to which it respectively belongs, under the general requirements and penalties provided by law for the settlement of other taxes.'' Section 9 provides that ''whenever any real property situate in any city or municipal corporation which has availed itself of the provisions of this act, has been sold for taxes and has been redeemed, the money paid for such redemption shall be apportioned by the county treasurer to such city or municipal corporation in the proportion which the tax due to such city or municipal corporation bears to the total tax for which such real property was sold.''

In brief, a reading of the entire act of 1895 shows a clear intent on the part of the legislature to make provision for the collection of municipal taxes under the ordinary machinery employed in collecting taxes for county and state purposes.

The manner and time for the collection of state and county taxes are established in chapter VII, title IX, part III, of the Political Code (secs. 3746–3819, inclusive). And so far as the state and county taxes are concerned, it is not disputed that the proceedings in the case under consideration were regular. Proceeding under the act of 1895 and the ordinance passed under the authority of the charter, the city taxes for which the land in controversy was sold were collected at the same time and in the same manner as the state and county taxes by the county tax collector, and in view of the circumstances related this official not only had the power but it was his plain duty to make the collection in this way.

Plaintiff next contends that there is no evidence that the city of San Jose ever authorized or levied a tax for the year 1898, and that therefore the deed made by the county tax collector to defendant is void.

By failure to deny in her answer the allegation in the cross-complaint of such levy the plaintiff admitted it. Moreover, the deed of the property to the state recited that such a levy was made, and under the provisions of section 3786 of the Political Code such recital is *prima facie* evidence of its truth. (*Rollins* v. *Wright,* 93 Cal. 395, [29 Pac. 58].)

The deed from William A. January, tax collector, to the defendant was executed in the usual form, and it was sufficient in form to divest the title of the state. (Pol. Code, sec. 3898; *Chapman* v. *Zoberlein,* 152 Cal. 216, [92 Pac. 188]; *Baird* v. *Munroe,* 150 Cal. 560, [89 Pac. 352]; *Bank of Lemoore* v. *Fulgham,* 151 Cal. 234, [90 Pac. 936].)

Section 3786 of the Political Code requires that the tax deed recite the matters recited in the certificate of sale, and by section 3776 of the same code the matters to be set forth in the certificate of sale are enumerated. In this case the certificate of sale recited that the tax levied for county purposes was $26.07. The deed recited that the tax for county purposes was $26.04. Plaintiff claims that these recitals being different, the deed to the state is void, but neither the total tax nor the amounts which go to make it up are required to be stated. It is the amount of the assessment which must be recited, and that is the same in both documents.

The notice of sale by the state is required to contain a detailed statement of all delinquent taxes, penalties, costs and expenses up to the date of sale. (Pol. Code, sec. 3897.) The notice under which the sale was made in this case incorrectly computed the interest, and accordingly the property was sold for an amount slightly in excess of the amount of taxes, penalties, interest and costs; and plaintiff claims that on this account the deed from the state to the defendant is void. Under the statute as it formerly read, when the property was sold to the person who would take the least quantity of land for the amount of the tax, a sale for more than the tax was void. But under the present law this property belonged to the state, and it might sell it for a sum in excess of the amount of the tax. (*Fox* v. *Wright,* 152 Cal. 59, 62, [91 Pac. 1005].) And while it may be that if the state failed to publish, post or mail the required notice of sale, or improperly described the property in such notice, a sale made thereunder might be void as to plaintiff, still in this case, as the

13 Cal. App.—28

plaintiff before the sale could have tendered the true amount due and redeemed the property, the mere fact that it was sold for a little more than the exact amount due does not render the sale void.

The judgment and orders are affirmed.

Cooper, P. J., concurred.

HALL, J.—I concur in the judgment, but in addition to what is said in the opinion prepared by Justice Kerrigan concerning the regularity of the sale of the property in suit by the state to the defendant, I am of the opinion that plaintiff is in no position to attack the title or possession of defendant, who is in possession claiming title under the sale by the state and the deed thereunder. By the deed to the state, under the sale for unpaid taxes, the plaintiff was divested of all title to the property in suit. "Such deed conveys to the state the absolute title to the property described therein. . . ." (Pol. Code, sec. 3787.) Her only right was a right to redeem or repurchase from the state, by complying with the provisions of section 3817, Political Code. This she has not done or offered to do. The owner of real property sold and conveyed to the state for unpaid taxes has no title thereto until he has redeemed under the provisions of section 3817, Political Code. Such redemption is in effect a repurchase. Not only is it expressly provided by section 3787 that the deed to the state conveys the absolute title to the state, but it is provided by section 3817 that the recordation of the controller's receipt for the redemption money shall have the effect of a reconveyance of the interest conveyed by the deed to the state. It is thus clear that the delinquent property owner has no title intermediate the sale and deed to the state, and the redemption from the state. Having neither redeemed nor offered to redeem under the provisions of section 3817, Political Code, plaintiff is in no position to attack either the possession or title of defendant, claiming under the sale by the state and the deed thereunder.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 14, 1910.